IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:04CR170 |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| KATHERINE S. SMITH | : | |
| Defendant. | | |

**DECISION, ENTRY AND ORDER OVERRULING DEFENDANT'S MOTION TO SUPPRESS (Doc. # 8)**

**I.    INTRODUCTION**

This matter is before the Court upon Defendant's motion to suppress (Doc. # 8 ), the Government's Response (Doc. # 9 ) the transcript of the proceedings on the Motion to Suppress (Doc. # 15), Defendant's Suppression Hearing Bench Brief (Doc. # 19), the Government's Response (Doc. # 21) and the record as a whole.

**II.    FACTUAL FINDINGS**

On November 14, 2004, at approximately 9:38 p.m., Defendant, Katherine Smith ("Smith") was the driver of a vehicle that took a wrong turn and ultimately wound up at Gate 22B of Wright Patterson Air Force Base. (Tr. 16, 13).  Stacy Roland was a passenger and the owner of the vehicle. (Tr. 13 ). Smith was driving because Roland was ill. (Tr. 46 ).

Upon approaching the gate, Sergeant Schultz made contact with the occupants of the vehicle and asked to see Smith's driver's license. (Tr. 14). It was later determined that Smith was driving the vehicle while her license was suspended. (Tr. 8). Roland did have a valid license.

Roland was asked to exit the vehicle and switch positions with Smith. (Tr. 14). The occupants were asked if there was anything in the vehicle that should not be there. (Tr. 14, 15, 23). Sgt. Yoho asked the question for safety reasons (Tr. 21) and also because the occupants of the vehicle appeared very fidgety and nervous. (Tr. 16, 23). Additionally, the officers observed Smith place her arm behind her seat and then bring it back again. (Tr. 16). In response to the officer's question, Roland produced a small white pill which later turned out to be a prescription pain pill. (Tr. 14 ).

At approximately 10:04 p.m. a police dog was walked around the vehicle and the dog alerted to the car. ( Tr.12, 17). The car was searched and a glass pipe was found between the front seats. (Tr. 8,17). Roland also produced a crack pipe which she had on her person. (Tr. 9). The occupants of the vehicle were detained at this point. (Tr. 9). The women were cuffed and frisked for weapons. (Tr. 17). Nothing was found. Smith maintains that she was searched several times while still at the Gate but that nothing was found.

Thereafter, Smith was taken to the Security Forces Control Center ("SFCC"). (Tr.31). While en route to the SFCC, Roland informed the officers that Smith had something on her. (Tr. 33, 35, 39-40). Upon arrival at the SFCC, Airman Landis, and Msgt. Smalls, (both female officers) took Smith into a women's bathroom for privacy reasons. While one person stood in front of Smith and the other behind her, Smith was ordered to unzip and unbutton her pants which Landis then rolled down from the waistline. (Tr. 32). Smith was told that she might as well give them what she had because Roland had told them that she had stuffed something into her pants. (Tr. 44). Once Smith's pants were rolled down she was ordered to bend her knees. She was not wearing any undergarments. (Tr. 44). Once Smith bent down, Landis stuck her hand

down between Smith's bottom, felt a baggie and retrieved it from Smith's crotch area. (Tr. 44). The clear plastic baggie was found to contain three white color rocks which ultimately tested positive for crack cocaine.

### III. LEGAL CONCLUSIONS

#### A. The Stop and Continued Detention

An ordinary traffic stop is analogous to a seizure under Terry. *Berkemer v. McCarty*, 468 U.S. 420, 438 (1984); *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996). Herein, Smith has not argued that the initial stop of the vehicle violated the Fourth Amendment. (Doc. # 19 at 5). Therefore, the Court focuses at this point on her detention after the initial stop. In *Palomino*, the Sixth Circuit indicated that, even if the initial stop was lawful, any subsequent detention must not be excessively intrusive. *Id*.

Put differently, once the purpose of the traffic stop has been completed, a motorist cannot be further detained unless something that occurred during the stop generated a reasonable and articulable suspicion of illegal activity. *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1993). See also, *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) ("Reasonable police conduct under such circumstances is such that any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference. ... Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot.") (citations omitted), *cert. denied*, 528 U.S. 1176 (2000). Conversely, officers may continue to detain an individual after the initial purpose of the stop has passed if something

3

occurred during the stop that generated reasonable suspicion to continue the detention. *Mesa*, 62 F.3d at 162.

In deciding whether reasonable suspicion existed, this Court must not consider the factors relied upon by the officers to justify the detention in isolation, since to do so would be to ignore the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266 (2002). The Government has the burden of proving by the preponderance of the evidence the existence of a reasonable suspicion, based upon objective and articulable facts, to believe that the Defendant was engaged in criminal activity. See e.g., *United States v. Rivas*, 157 F.3d 364, 367 (5th Cir. 1998); *United States v. Shareef*, 100 F.3d 1491, 1500-01 (10th Cir. 1996); *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990), cert. denied, 498 U.S. 1039 (1991).

Smith argues that once the officers determined that Roland had a valid driver's license, they should have allowed the women to turn around and exit the area because "[u]p to that point there was nothing legally preventing the women from going on their way." (Doc. # 19 at 2). Yet, the Sixth Circuit has recognized "questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *United States v. Burton*, 334 F. 3d 514, 518 (6th Cir. 2003). Moreover, this argument completely ignores the fact that the time the question was asked, the officers had probable cause to believe that Smith had committed a misdemeanor traffic violation, i.e., Driving Under Suspension. Pursuant to the authority of *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536 (2001), Smith was subject to arrest as soon as the officers determined that she was driving a vehicle while her license was suspended.

In addition, events occurred during the stop that generated reasonable suspicion to

4

continue the detention. *Mesa*, 62 F.3d at 162. The occupants of the vehicle appeared nervous and the officer observed furtive movements. After the dog alerted on the vehicle the owner gave permission to search it. Two crack pipes were located. At this point, the officers had probable cause to believe that both Smith and Roland were in possession of criminal tools/drug paraphernalia.[1] As noted by the Court in *Devenpeck v. Alford*, 125 S. Ct. 588 (2004), "[a] warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment if, given the facts known to the officer, there is probable cause to believe that a crime has been or is being committed." There is no requirement that the offense establishing probable cause must be the same or closely related to the one the officer identifies at the time of arrest. *Id.*

Moreover, as noted in *United States v. Herbin,* 343 F. 3d 807, 810 (6th Cir. 2003):

> Nor do the officers' subjective intentions become relevant in assessing the agents' conduct *after* the initial stop. Herbin contends that the agents ran afoul of the Fourth Amendment when, without any intention of pursuing the traffic violations, the agents drew their guns on the vehicle occupants, seized the key to Lisa Thompson's car, and requested her consent to search it. The Supreme Court's decision in *Ohio v. Robinette,* 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996), however, forecloses this argument. It makes clear that continuing to detain a motorist does not become unlawful just because the officer has determined in his own mind not to pursue the traffic violation. *Id.* at 38. From beginning to end, the constitutionality of a traffic stop under the Fourth Amendment depends on the objectively reasonable justifications for the officers' actions, not their subjective intentions.

In considering the totality of the circumstances the Court concludes that it was not unreasonable for the gate officers to continue to detain Smith after the initial stop of the vehicle.

---

[1] The Supreme Court has approved the inference by a police officer that a passenger in a vehicle "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing." *Maryland v. Pringle,* 540 U.S. 366, 373, 124 S. Ct. 795, 801, 157 L. Ed. 2d 769 (2003); *see also Wyoming v. Houghton,* 526 U.S. 295, 304-05, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

While nervousness alone is generally not sufficient to establish the existence of a reasonable suspicion, the objective and articulable facts reveal much more than nervousness. Indeed, the officers had probable cause to believe Smith was committing a traffic violation, the officers observed nervousness and furtive movements, in response to the officer's question, Roland produced a small white pill, the dog alerted on the car, Roland acquiesced in permitting the officers to search the vehicle where crack pipes were located. The search and subsequent detention of Smith was reasonable and did not violate the Fourth Amendment.

> B. **The Strip Search Incident to Smith's Arrest**

In her initial Motion to Suppress, Smith asserted that she was the subject of a body cavity search. The evidence adduced at the suppression hearing established that there was no body cavity search but there was clearly a strip search of Smith's person.

The lawfulness of a strip search depends on whether the circumstances reasonably justify such an intrusive invasion of privacy. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S. Ct. 1861 (1979). A strip search--even without a body cavity search--has always been viewed as an extraordinary invasion of privacy requiring consideration of the "totality of circumstances" and analysis under the *Bell* factors for reasonableness.

In considering the question of reasonableness, a court must assess the totality of the circumstances, including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell,* 441 U.S. at 559. The inquiry is of a practical nature, calling for a reasonable assessment of the circumstances.

In this case, Smith was taken into a restroom by two female officers. The search was

justified by the fact that they had reasonable suspicion that Smith had contraband on her person. The place where it was conducted was private and outside the presence of any male officers. The scope of the intrusion was limited to what was necessary to determine if Smith had contraband on her person. The totality of the circumstances reveal that the search was not unduly intrusive or without substantial justification.

Smith argues that a warrant was required in order to conduct a strip search of her person. (Doc. # 19 at 9). Smith relies on the Sixth Circuit's unpublished opinion regarding a § 1983 claim in *Toles v. Friedman,* 2000 U.S. App. LEXIS 33237, No. 99-4031, 2000 WL 1871683 (6th Cir. Dec 11, 2000). However, the circumstances in the instant case are significantly different from those in *Toles*. In *Toles*, three girls were trying on bathing suits in a department store but did not purchase any. A suspicious clerk, due to the length of time the girls were in the dressing room, called an off-duty police officer who was working security for the store. As the girls attempted to leave, they were stopped. After searching their purses and finding nothing, the officer arranged for a female security guard to strip search the girls. She did so but found nothing.

The Sixth Circuit dismissed the appeal for lack of jurisdiction because an order denying qualified immunity due to the presence of a disputed issue of material fact is not immediately appealable. The Court found that there was an issue of material fact: whether the girls consented to the strip search. The Court stated that "a reasonable law enforcement officer, in the circumstances presented, could not believe that exigent circumstances justified the warrantless strip searches of the young women," and that "the only possible exception to the warrant requirement that could have validated the presumptively unreasonable, warrantless search was a

7

search undertaken pursuant to the consent of the plaintiffs." *Id.* at ** 4.  In *Toles*, the defendant sought to justify the strip search on the basis of exigent circumstances, an exception to the warrant requirement. *Toles* arose in the commercial context of a suspected theft by customers in a department store - a situation totally unlike the suspected possession of drugs by a person lawfully arrested.

The Sixth Circuit has recognized that in some circumstances a warrantless strip search is not unreasonable. In *Dobrowolskyj v. Jefferson County,* 823 F.2d 955 (6th Cir. 1987), the Sixth Circuit held that under *Wolfish*'s balancing analysis, the strip search of a detainee in a local jail pursuant to a policy of strip searching detainees before moving them into an area of the jail where they would have contact with the general prison population, was not an unreasonable search and therefore did not violate the Fourth Amendment. *See also*: *United States v. Cofield*, 391 F. 3d 334 (1st Cir. 2004).

The Government maintains that the search of Smith was incident to arrest and therefore a warrant was not required. It is well-settled that under the "search-incident-to-a-lawful-arrest" exception to the warrant requirement, an officer may conduct a full search of an arrestee's person. *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467 (1973); *United States v. Montgomery*, 377 F. 3d582 (6th Cir. 2004). Smith cites to the Ninth Circuit case of *Fuller v. M.G. Jewelry*, 950 F. 2d 1437 (9th Cir. 1991) in support of her argument that a warrant was required before the search occurred. In *Fuller*, the object of the search was a stolen ring. The Court rejected the contention that the "search-incident-to-a-lawful-arrest" exception to the warrant requirement allowed for strip-searches. However, in so deciding, the Court relied on an earlier decision, *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984)(per curiam), cert. denied, 471 U.S.

1053, 105 S. Ct. 2114 (1985), which enunciates a "bright line" constitutional rule concerning all strip searches following minor offenses:

> Balancing [the jail's security] interest against the privacy interests of arrestees, we hold that arrestees may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband. Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record. *Id.* at 617.

Herein, in addition to all the facts and circumstances developed during the course of the stop, the officers learned from Roland that Smith had secreted drugs on her person. Thus, they had reasonable suspicion that she had contraband on her person. Balancing the *Bell* factors including the intrusiveness of the strip search against the need for an immediate search and possible destruction of evidence, the Court concludes that under these circumstances, the warrantless search of Smith did not offend the Fourth Amendment.

Accordingly, the Court overrules Defendant's Motion to Suppress (Doc. # 19).

June 17, 2005

                                                               s/ Sharon L. Ovington  
                                                                 Sharon L. Ovington  
                                                          United States Magistrate Judge